UNITED STATES of America,
Plaintiff,

v.

John K. WHITESIDE,
Defendant.

Crim. A. No. 75–8.

United States District Court,
D. Delaware.

April 3, 1975.

**1386**

Ralph F. Keil, U. S. Atty., and David B. Hooper, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Robert H. Hallsted, Jr., of Biggs & Battaglia, Wilmington, Del., and Joseph A. Ryan, of Duane, Morris & Heckscher, Paoli, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

LATCHUM, Chief Judge.

On January 22, 1975 the Grand Jury returned a three count indictment against John K. Whiteside, charging a violation of 26 U.S.C. § 7201. The indictment charges that Whiteside had been employed by Arthur D. Henry on three occasions to prepare a joint income tax return for Henry and his wife for the calendar years 1968, 1969 and 1970, that Whiteside had obtained money from Henry for the payment of the income taxes due for each calendar year, and that Whiteside had knowingly and willfully attempted to evade and defeat the payment of the tax due by failing to pay the taxes to the United States, instead appropriating and converting it to his own use.[1] An arrest warrant was issued on January 22 and Whiteside surrendered to the U.S. Marshal on January 24, 1975.[2] However, on January 23, 1975, while the warrant for Whiteside's arrest

---

1. Docket Item 1.

2. Docket Items 2 and 4.

was still outstanding, the Wilmington District Office of the Internal Revenue Service issued a press release which initially summarized the allegations of the indictment correctly, although adding that Whiteside was "of J–K Accounting Services in Newark, Delaware," and which then proceeded to offer "Delaware taxpayers a seven-point checklist to help them avoid unscrupulous tax return preparers." [3] Furthermore, according to Whiteside, on January 24 and 25 the four radio stations in Wilmington carried a "false and libelous" news release which had been distributed to them by Anthony Ciatola, Wilmington Public Relations Officer of the Internal Revenue Service, which was then followed by forty-five seconds worth of Mr. Ciatola's tips on "how to stay away from crooked tax preparers." [4]

On the basis of this publicity, the defendant moved to dismiss the indictment or in the alternative to transfer the case from the District of Delaware to the Eastern District of Pennsylvania. Defendant also moved to dismiss the indictment because of prejudice arising from the delay in returning it until "almost six years after the date of defendant's alleged first offense" and because the statute of limitations had run. In addition, both the defendant and the government have tendered respective discovery motions. The Court having heard oral argument concerning these motions on March 24, 1975 is now ready to rule.

1) *Defendant's Motion to Dismiss the Indictment.*

 Stressing the issuance of the IRS press release simultaneously with the return of the indictment, the attachment to the release of a list of "tips" on how to avoid unscrupulous income tax return preparers, and the preparation by the IRS Public Relations Officer of an inflammatory radio announcement containing inaccurate statements regarding the indictment, followed by further tips for taxpayers, defendant argues that the indictment must be dismissed because "inherently prejudicial" pretrial publicity has denied him the opportunity to have a "constitutionally fair trial." While it is true that the content of the press release and radio announcements associated with the IRS are of more than passing interest to most individuals at this time of year, the Court must deny defendant's motion because an indictment may not be dismissed due to pretrial publicity of this type without, at a minimum, the Court conducting a *voir dire* examination of the jury panel at the commencement of trial. United States v. Abbott Laboratories, 505 F.2d 565, 571–572 (C.A. 4, 1974), cert. denied, —— U.S. ——, 95 S.Ct. 1424, 43 L.Ed.2d 671; United States v. Wolfson, 294 F.Supp. 267, 274 (D.Del.1968); United States v. DiLorenzo, 49 F.R.D. 86, 88 (S.D.N.Y. 1969).

2) *Defendant's Motion For A Change Of Venue.*

██ The Court will reserve decision on defendant's motion for a change of venue until after conducting *voir dire* of the jury panel. Although defendant's counsel maintained at oral argument and in his memorandum (Docket Item 13) that defendant's "business" has been affected seriously "by the indictment, the press release, and the radio announcement," it is the opinion of the Court that there has been no showing of a reasonable likelihood that the *past* publicity will prevent the holding of a fair trial on the offenses charged. United States v. Barber, 297 F.Supp. 917, 921 (D.Del. 1969); United States v. Farries, 459 F.2d 1057, 1061 (C.A. 3, 1972) cert. denied, 409 U.S. 888, 93 S.Ct. 143, 35 L.Ed. 2d 275 (1972). Accordingly, the motion will be denied without prejudice to

---

3. Exhibit A to Docket Item 16 (Government's Response to Defendant's motion to dismiss indictment and for transfer from the District for trial). J. E. Quinn, District Director of IRS, "offered" the tips.

4. Affidavit A to Docket Item 9, Motion to Dismiss Indictment; Docket Item 10, Motion for Transfer from the District for Trial.

the defendant's right to renew at the time of trial if it appears on *voir dire* that it is impossible to secure a fair and impartial jury in this district. *Barber, supra;* United States v. Addonizio, 313 F.Supp. 486, 493–494 (D.N.J.1970), aff'd 451 F.2d 49 (C.A. 3, 1972), cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

3) *Defendant's Motion To Dismiss The Case For Unconstitutional Delay In Returning The Indictment.*

■■■ Before ruling on this issue, the Court must consider the chronology of events leading up to the return of the indictment on January 22, 1975. Investigation of the defendant was not commenced until March 8, 1973 since, according to the Assistant United States Attorney, the government could not detect any irregularities in Mr. Henry's tax return without having established a pattern of reporting, which in turn required examination of tax returns for at least two years in succession. Defendant was notified promptly of the commencement of investigation on March 8, 1973. After the investigation was completed the case was reviewed by Regional Counsel's Office of the IRS and then by the Tax Division of the Department of Justice. Defendant had conferences with the Chief of Intelligence on November 19, 1973, with the Regional Counsel's Office on February 20, 1974, and he had scheduled a final conference with the Department of Justice for October 18, 1974 which he later cancelled. On December 2, 1974 the United States Attorney's Office in Delaware received the case and the Grand Jury returned the indictment on January 22, 1975.

Defendant's Sixth Amendment rights have not been violated because they do not attach until he becomes an "accused," i. e., until an indictment has been returned or he has been arrested. United States v. Benson, 487 F.2d 978, 985 (C.A.

3, 1973); United States v. Jasper, 460 F.2d 1224, 1225 (C.A. 3, 1972); United States v. Ricketson, 498 F.2d 367, 370 (C.A.7, 1974), cert. denied 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974). While preindictment delay may violate due process, United States v. Marion, 404 U.S. 307, 324–326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1972), United States v. Benson, 487 F.2d 978, 985 (C.A. 3, 1973), this occurs only when the defendant can prove that there has been substantial and actual prejudice to his right to a fair trial and that the delay was purposefully caused by the government in order to gain a tactical advantage. *Marion, supra; Benson, supra;* United States v. MacClain, 501 F.2d 1006, 1010 (C.A. 10, 1974). Here the defendant has offered no proof of any prejudice to his ability to *prepare* his case by reason of the time span between the acts alleged in the indictment and the return of the indictment. United States v. Coppola, 296 F.Supp. 903, 905 (D.Conn.1969), aff'd 425 F.2d 660 (C.A. 2, 1969).[5] Therefore, the Court will deny the defendant's motion to dismiss the case for an unconstitutional "delay" in returning the indictment.

4) *Defendant's Motion To Dismiss The Indictment Based On The Statute of Limitations.*[6]

■■■ Since the statute of limitations for a violation of 26 U.S.C. § 7201 does not run until 6 years after the commission of the offense, defendant's motion will be denied. 26 U.S.C. § 6531; United States v. Gase, 248 F.Supp. 704 (N.D. Ohio 1965).

5) *Defendant's And Government's Discovery Motions.*

■■■ The defendant has moved for the production of the following information from the government's files:

 1. "A list of all witnesses that the government intends to call at

---

5. Defendant has only made the conclusory assertions that the indictment was "unreasonably delayed" to his prejudice. (Docket Item 9).

6. Neither side briefed or argued this motion.

trial." This request will be denied because currently under Rule 16, F.R.Crim.P., this information is not discoverable. United States v. Wolfson, 294 F.Supp. 267, 277 (D. Del.1968).

2. "Statements of the government's witnesses." This request will be denied at this stage of the case. 18 U.S.C. § 3500(b). The government has stated that it will provide any favorable statements of such witnesses in accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. "Grand Jury notes of the testimony of the government's witnesses." This request will be denied because there has been no showing of a particularized need for the disclosure of such material. United States v. Wolfson, 294 F.Supp. 267, 271 (D.Del.1968); Rule 6(e), F.R.Crim.P.

4. "A list together with copies of any papers, documents, or other tangible objects having bearing on the subject matter of this indictment which the government intends to use at trial." The request will be granted conditioned as hereinafter discussed. Rule 16(b), F.R.Crim.P.

5. "Copies of any report, document or any other instrument which supports allegations contained in the indictment, such as but not limited to Special Intelligence Agent's Internal Revenue Service Report." This request will be denied since Rule 16(b), F.R.Crim.P., does not authorize granting inspection or making copies of "reports, memoranda or other internal government documents made by government agents in connection with the investigation or prosecution of the case."

6. "Any and all reports, admissions or statements made by or secured from the defendant which are in the custody, control of the government whether report was stenographically rendered in any form of writing by the person taking or over hearing such statements or reported by means of any mechanical or electronic transcript." Since the government has agreed to produce "all statements made by the defendant which were recorded in some way," it is unnecessary for the Court to rule on this request.

7. "Whether or not the government has any evidence favorable to the accused." Since the government has replied that there was no favorable evidence to its knowledge, but that "anything which might be found in this category will be turned over," and since the government's reply appears to have been made in good faith, it is unnecessary for the Court to rule on this request.

Pursuant to Rule 16(c), the Court conditions the granting of discovery to defendant with respect to Item 4 above upon defendant's permitting the government to inspect and copy all documents, reports, books or tangible objects the defendant intends to produce at trial. F.R. Crim.P. 16(c); Docket Item 15. The defendant need not comply with the government's request for production if he elects to forego the discovery that the Court has ordered with respect to Item 4 above, and he shall so notify the United States Attorney in writing of his election not to comply with the government's request within ten (10) days of the date of this opinion and order. If he elects to produce as requested by the government, he shall produce within twenty (20) days from the date of this opinion and order the information for the government's inspection and copying that he then believes in good faith falls within the government's request. The government, however, shall produce all documents to which the defendant is entitled under Rule 16(b) promptly after the expiration of the ten days election period if the defendant does not elect to forego production of his documents, etc. to the government.